UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————

| | | |
|---|---|---|
| HELEN SWARTZ, Individually, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No.: 1:25-cv-1162 |
| | : | |
| CHELSEA GRAND LLC, a New | : | |
| York Limited Liability Company, and | : | |
| CHELSEA GRAND WEST LLC, a New | : | |
| York Limited Liability Company, | : | |
| | : | |
| Defendants. | : | |

—————————————————————/

## COMPLAINT
(Injunctive Relief Demanded)

Plaintiff HELEN SWARTZ, Individually, on her behalf and on behalf of all other

individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant,

CHELSEA GRAND WEST LLC, a New York Limited Liability Company, and CHELSEA

GRAND LLC, a New York Limited Liability Company (sometimes referred to as "Defendants"),

for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the

Americans with Disabilities Act, 42 U.S.C. §12181 et seq. (ADA), and for damages pursuant to

N.Y. Exec. Law Section §296, et seq. and New York Civil Rights Law § 40, et seq.

## COUNT I

1.      Defendants' property, The Chelsean New York Hotel, is located at 160 West 25th

Street, New York, NY 10001, in the County of New York (hereinafter referred to as "Defendants'

property", "subject property" or "Hotel").

2.      Venue is properly located in the Southern District of New York because venue lies

in the judicial district of the property situs. The subject property is located in and does business

within this judicial district.

3.     Pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §12181 et seq.  See also 28 U.S.C. §2201 and §2202. The Court has supplemental jurisdiction over the State Law Claims, pursuant to 28 U.S.C. §1367.

4.     Plaintiff Helen Swartz is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.

5.     Ms. Swartz has multiple sclerosis, is mobility impaired, and uses an electric scooter to ambulate.

6.     Helen Swartz was born and raised in New York and visits New York City an average of five times a year to see shows, eat at facilities, visit family and friends, get her hair cut, and to shop at stores.

7.     Her younger daughter lives in Brooklyn and attends The New School on Fifth Avenue, her father lives in Great Neck, her brother lives on the upper West Side and her first cousins reside in New York City.  When Ms. Swartz is in New York City her eldest daughter and granddaughter often take the train from Philadelphia to New York to meet her. Ms. Swartz dines out with friends and family every time she is in New York.

8.     Helen Swartz visited the subject property from November 12, 2024, until November 14, 2024.

9.     During her visit to the property, Plaintiff encountered numerous architectural barriers at the subject property which impaired her use of the facilities and the amenities offered, and have endangered her safety at the facilities and her ability to access the facilities and use the

restrooms.

10.    Ms. Swartz has plans to return to the subject property on June 22, 2025, if the facilities are made fully accessible and the barriers to access have been corrected.

11.    Defendant CHELSEA GRAND WEST LLC owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

12.    The place of public accommodation that the Defendant CHELSEA GRAND WEST LLC owns, leases, leases to, or operates is The Chelsean New York Hotel, which is located at 160 West 25th Street, New York, NY 10001.

13.    CHELSEA GRAND LLC was formerly known as CHELSEA GRAND WEST LLC, but CHELSEA GRAND WEST LLC is still currently listed as the owner of record of the subject property in the New York state records.

14.    Defendant CHELSEA GRAND LLC owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

15.    The place of public accommodation that the Defendant CHELSEA GRAND LLC owns, leases, leases to, or operates is The Chelsean New York Hotel, which is located at 160 West 25th Street, New York, NY 10001.

16.    Helen Swartz has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the subject property as described but not necessarily limited to the allegations set forth in this Complaint. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by the Defendants.

17.     Helen Swartz has visited the subject property and desires to visit the subject property again in the near future, not only to avail herself of the goods and services available at the property, but to assure herself that this property is in compliance with the ADA so that she and others similarly situated will have full and equal enjoyment of the subject property without fear of discrimination.

18.     The Defendants have discriminated against the individual Plaintiff and others similarly situated by denying them access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. §12182 et seq.

19.     The Defendants have discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendants have 10 or fewer employees and gross receipts of $500,000 or less).

20.     A preliminary inspection of the subject property has shown that violations exist. These violations that Ms. Swartz has personally observed or encountered, and which have been verified, are set forth in the following paragraphs.

**Maintenance**

21.     The accessible features of the facility are not maintained.

22.     The foregoing creates barriers to access for the Plaintiff, as set forth herein, in violation of 28 CFR §36.211.

**Main Entrance / Lobby Area**

23.     There is no signage indicating accessibility with the international symbol of accessibility (ISA) posted at the main entrance.

24.     The foregoing makes it difficult for the plaintiff to identify the facility as accessible and to locate the accessible route, in violation of 216.6 and 703.7.2.1 of the 2010 ADA Standards, whose resolution is readily achievable.

25.     The area rugs in the hotel's lobby area were not security attached.

26.     This causes instability for mobility devices such as Plaintiff's scooter, and causes a safety hazard, in violation of 2010 ADAAG 302.2, whose resolution is readily achievable.

**Lobby Unisex Accessible Restroom 1**

27.     There was not 56 x 60 inches of clear floor space surrounding the toilet.

28.     This makes it difficult for the Plaintiff to transfer onto and off of the toilet, and is in violation of 2010 ADAAG 604.3.1, whose resolution is readily achievable.

29.     There was not 18 x 60 inches of clear floor space on the pull side of the bathroom door to exit same.

30.     This makes it difficult for Plaintiff to exit said bathroom, and is in violation of 2010 ADAAG 404.2.4, whose resolution is readily achievable.

31.     The lobby unisex accessible lavatory had a water pipe which was exposed and not insulated.

32.     This causes a potential cutting and/or burning hazard, which is in violation of 2010 ADAAG 606.5, whose resolution is readily achievable.

33.     The toilet in the unisex accessible lobby bathroom had a rear grab bar that was not 36 inches wide, and did not extend 24 inches from the centerline to the open side of the toilet.

34.     The foregoing makes it difficult for the plaintiff to transfer onto and off of the seat, in violation of sections 604.5.1 and 609.3 of the 2010 ADA Standards, whose resolution is readily achievable.

35.    The operable mechanism of the toilet cover dispenser in the lobby unisex bathroom is mounted in excess of 48 inches high.

36.    This made it difficult for the Plaintiff to reach, in violation of 2010 ADAAG 308.2, whose resolution is readily achievable.

37.    There is not 18 inches of clearance extending out at least 60 inches on the pull side of the bathroom door beyond the latch.

38.    This makes it extremely difficult if not impossible for a disabled individual to exit the restroom independently, and is in violation of 2010 ADAAG 402.2.4.1, whose resolution is readily achievable.

**Lobby Unisex Accessible Restroom 2**

39.    There was not 56 x 60 inches of clear floor space surrounding the toilet.

40.    This makes it difficult for the Plaintiff to transfer onto and off of the toilet, and is in violation of 2010 ADAAG 604.3.1, whose resolution is readily achievable.

41.    The toilet flush control was not mounted on the open and wide side of the toilet.

42.    Same makes it difficult for Plaintiff to reach, and is in violation of 2010 ADAAG 604.6, whose resolution is readily achievable.

43.    The lavatory had a water pipe which was exposed and not insulated, thus causing a potential cutting hazard.

44.    The foregoing made it difficult for the plaintiff to safely utilize the sink, in violation of section 606.5 in the 2010 ADA Standards, whose resolution is readily achievable.

45.    The toilet in the unisex accessible lobby bathroom had a rear grab bar that was not 36 inches wide, and did not extend 24 inches from the centerline to the open side of the toilet.

46.    The foregoing makes it difficult for the plaintiff to transfer onto and off of the seat,

in violation of sections 604.5.1 and 609.3 of the 2010 ADA Standards, whose resolution is readily achievable.

47.    The operable mechanism of the toilet cover dispenser in the lobby unisex bathroom is mounted in excess of 48 inches high.

48.    This made it difficult for the Plaintiff to reach, and was in violation of 2010 ADAAG 308.2, whose resolution is readily achievable.

**The Rose Bar**

49.    There was no accessible seating, whether at the bar or any tables.

50.    This makes it difficult for the Plaintiff to comfortably consume food and/or beverages there, and is in violation of 2010 ADAAG 226 and 902, whose resolution is readily achievable.

51.    The bottom edge of the reflecting surface of the bathroom sink mirror is more than 40 inches high.

52.    Same makes this mirror unusable by Plaintiff due to its height, and is in violation of 2010 ADAAG 603.3, whose resolution is readily achievable.

53.    There is not 18 x 60 inches of clearance on the pull side of the bathroom door to exit same.

54.    This makes it difficult for Plaintiff to exit said bathroom, and is in violations of 2010 ADAAG 404.2.4, whose resolution is readily achievable.

55.    The toilet cover dispenser was mounted in excess of 48 inches high.

56.    This made it difficult for the Plaintiff to reach, in violation of 2010 ADAAG 308.2, whose resolution is readily achievable.

57.    There was not 56 x 60 inches of clear floor space surrounding the toilet.

58.     This makes it difficult for the Plaintiff to transfer onto and off of the toilet, and is in violation of 2010 ADAAG 604.3.1, whose resolution is readily achievable.

**<u>Accessible Guest Rooms</u>**

59.     The Hotel does not provide the required amount of compliant accessible guest rooms.

60.     Moreover, the Hotel does not provide the required number of accessible guest rooms with a roll-in showers and/or accessible tubs.

61.     Additionally, the accessible rooms are not dispersed among the various classes of accommodations. Specifically, the only accessible room types available at the hotel are 1 King Accessible and 2 Double Bed Room Accessible, and there are no options for 2 Queens Corner Room, high floor rooms, Deluxe King nor Suite.

62.     Nor does the hotel website allow guests to know whether they are booking mobility accessible guest rooms with roll in showers or accessible tubs.

63.     The foregoing is in violation of section 224.2 and 224.5 of the 2010 ADA Standards, whose resolution is readily achievable.

64.     In the hotel's accessible guest room 706, there is not 56 x 60 inches of clear floor space surrounding the toilet.

65.     This makes it difficult for the Plaintiff to transfer onto and off of the toilet, and is in violation of 2010 ADAAG 604.3.1, whose resolution is readily achievable.

66.     In the hotel's accessible guest room 706, the toilet paper dispenser is not mounted with its centerline between 7 and 9 inches in front of the toilet.

67.     This makes same difficult to reach in violation of 2010 ADAAG 604.7, whose resolution is readily achievable.

68.    In the hotel's accessible guest room 706, the toilet flush control is not on the open and wide side of the toilet.

69.    Same makes it difficult for Plaintiff to reach, and is in violation of 2010 ADAAG 604.6, whose resolution is readily achievable.

70.    In the hotel's accessible guest room 706, the rear toilet grab bar is not 36 inches in width, and does not extend at least 24 inches from the centerline to the open side of the toilet.

71.    This makes it difficult for the Plaintiff to transfer onto and off of the toilet, and is in violation of 2010 ADAAG 604.5, whose resolution is readily achievable.

72.    In the hotel's accessible guest room 706, the bathroom shelf containing towels, the hair dryer, and extra toilet paper is mounted more than 48 inches high.

73.    Same makes the items difficult to reach, and is in violation of 2010 ADAAG 308, whose resolution is readily achievable.

74.    In the hotel's accessible guest room 706, the soap, shampoo, and conditioner dispensers, as well as the soap dish, obstruct the 12 inches of clear space above the shower's grab bar.

75.    Same makes it difficult for Plaintiff to access the grab bars, and is in violation of 2010 ADAAG 609.3, whose resolution is readily achievable.

76.    In the hotel's accessible guest room 706, the roll in shower without a fixed seat does not have grab bars on all 3 sides of the shower. Specifically, there is no grab bar on the control end wall.

77.     Same prevents Plaintiff from safely using shower, and is in violation of 2010 ADAAG 608.3, whose resolution is readily achievable.

78.     In the hotel's accessible guest room 706, the rear wall grab bar does not extend to within 6 inches of the control end wall.

79.     Same prevents Plaintiff from safely using shower, and is in violation of 2010 ADAAG 608.3, whose resolution is readily achievable.

80.     In the hotel's accessible guest room 706, the unbeveled threshold to the roll-in shower exceeds 1/4 inch.

81.     Same prevents Plaintiff from safely using shower, and is in violation of 2010 ADAAG 608.7, whose resolution is readily achievable.

82.     In the hotel's accessible guest room 706, the water and drain pipes beneath the bathroom sink are not insulated, and pose a potential cutting and/or burning hazard.

83.     This causes a potential cutting and/or burning hazard, which is in violation of 2010 ADAAG 606.5, whose resolution is readily achievable.

84.     In the hotel's accessible guest room 706, the lamp controls require tight pinching and/or twisting of the wrist to operate.

85.     This makes it difficult for Plaintiff to use same, in violation of 2010 ADAAG 309.4, whose resolution is readily achievable.

86.     In the hotel's accessible guest room 706, the window controls require tight pinching

and/or twisting of the wrist to operate.

87.    This makes it difficult for Plaintiff to use same, in violation of 2010 ADAAG 309.4, whose resolution is readily achievable.

88.    In the hotel's accessible guest room 706, the hotel room door latch is mounted in excess of 48 inches high.

89.    Same makes the items difficult to reach, and is in violation of 2010 ADAAG 308, whose resolution is readily achievable.

90.    It is suspected that the other accessible guest rooms have similar violations of the Americans with Disabilities Act, and a full inspection of all accessible rooms will be necessary as Plaintiff does not know which room she will be assigned upon her future stays at the hotel.

91.    The foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as adopted by the U.S. Department of Justice.

92.     The discriminatory violations described in the foregoing paragraphs are not an exclusive list of the Defendants' ADA violations.

93.    Plaintiff requires the inspection of the Defendants' place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access, particularly with regard to the accessible guest rooms, if any such exist.

94.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and

damaged by the Defendants because of the Defendants' ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

95.     Defendants have discriminated against the individual Plaintiff by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. §12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

96.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted. Furthermore, the public interest would not be disserved by a permanent injunction. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. §12205 and 28 CFR 36.505.

97.     Defendants are required to remove the existing barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed

prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

98.    Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).  All other conditions precedent have been met by Plaintiff or waived by the Defendants.

99.    Pursuant to 42 U.S.C. §12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter Cachet Boutique Hotel NYC to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendants cures its violations of the ADA.  The Order shall further require the Defendants to maintain the required assessable features on an ongoing basis.

**WHEREFORE,** Plaintiff respectfully requests:

a.    The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §12181 et seq.

b.    Injunctive relief against the Defendants including an order to make all

13

readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, and to require the institution of a policy that requires Defendants to maintain its accessible features.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. §12205.

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
## VIOLATION OF NEW YORK CIVIL RIGHTS LAW

100.    Plaintiff realleges all prior obligations as if fully set forth herein.

101.    New York Law provides that it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex or *disability* or marital status of any person, directly or indirectly..... [to deny] such person any of the accommodations, advantages, facilities or privileges thereof........N.Y. Exec. Law Section 296(2)(a).

102.    For the purposes of the foregoing paragraph, "discriminatory practice" includes:

14

A.     A refusal to make reasonable modification in policies, practices or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodation to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

B.     A refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such a person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden; and

C.     A refusal to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities......, where such removal is readily achievable......N.Y. Exec. Law Section 296(2)(c).

99.     Pursuant to N.Y. Exec. Law Section 297(9), "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages."

100.     Due to Defendants' discrimination and failure to provide accessibility by removing barriers to access at its property as discussed in this Complaint, Plaintiff suffered emotional distress, humiliation, mental anguish and other injuries.

101.     A place of public accommodation "shall be deemed to include ... hotels," N.Y. Civ. Rights Law §40.

102.     New York law mandates, "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation...." N.Y. Civ. Rights Law §40.

103.     Defendants' property is a place of public accommodation as defined in §40.

104.     N.Y. Civ. Rights Law §41 states, "Any person who or any agency, bureau, corporation or association shall violate any provisions of sections forty, forty-a, forty-b or forty-two or incite the violation of any said provisions...shall for each and every violation thereof be

liable to a penalty of not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00) to be recovered by the person aggrieved…thereby in any court of competent jurisdiction in the county in which the plaintiff or the Defendants shall reside… also, any person who shall violate any of the provisions of the foregoing section shall be deemed guilty of a misdemeanor."

105.    Plaintiff, Ms. Swartz visited Defendants' property and encountered the discriminatory barriers discussed in this Complaint and seeks minimum statutory damages under §41.

106.    By maintaining architectural barriers and policies that discriminate against people with disabilities and through the other actions described above, Defendants have, directly and/or indirectly, refused, withheld from, and denied to Plaintiff because of her disability, the full enjoyment of its property.

107.    Plaintiff, Helen Swartz, has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

**WHEREFORE**, the Plaintiff respectfully requests that this Court award Helen Swartz statutory damages pursuant to N.Y. Civ. Rights Law §41, and compensatory damages pursuant to N.Y. Exec. Law Section 297(9) and award Plaintiff's attorney's fees, costs and expenses incurred prosecuting this action.

Dated:  February 10, 2025                Respectfully submitted,

*/s/  Brandon A. Rotbart*
Brandon A. Rotbart (Licensed in NYSD)
LAW OFFICE OF BRANDON A. ROTBART, P.A.
11098 Biscayne Blvd., Suite 401-18
Miami, FL 33161
Phone: (305) 350-7400
rotbart@rotbartlaw.com

16

*Counsel for Plaintiff Helen Swartz*